Denise CARVER

v.

Mildred DENNIS, Individually and in her official capacity as County Court Clerk of Jackson County, Tennessee.

No. 2:94–0081.

United States District Court, M.D. Tennessee, Northeastern Division.

May 15, 1995.

Richard M. Brooks, Carthage, TN, for plaintiff.

Manuel Edwards and Joseph F. Edwards, Edwards & Edwards, Cookeville, TN, for defendant.

## MEMORANDUM

MORTON, Senior District Judge.

## I. INTRODUCTION

Plaintiff is a former deputy clerk of the County Court Clerk's office in Jackson County, Tennessee. She brought this § 1983 action against her former employer, the Jackson County Court Clerk, claiming that defendant violated her First Amendment rights by terminating her after she engaged in protected political activity. Specifically, plaintiff announced her intention to run for her boss's office in the upcoming election. One day after plaintiff announced her candidacy, defendant fired her.

Pending before the court are defendant's motions for (1) partial summary judgment on the issue of qualified immunity and (2) summary judgment on the entire § 1983 claim. On April 26, 1995, the court heard oral arguments on the motions. For the reasons set forth below, the defendant's motion for summary judgment is granted.

## II. FACTS

The facts are not in dispute. The County Clerk of Jackson County is an elected official. Defendant has held the office of County Clerk since 1978. The office of County Clerk and its responsibilities are established by statute, T.C.A. § 18–6–101, et seq. Plaintiff was defendant's deputy clerk from 1978 until her termination on December 9, 1993. She was employed at the will of the defendant. T.C.A. § 8–20–109.[1]

The Jackson County Clerk's office operates a single room in the county courthouse, unofficially estimated to be 12 × 14 feet in size.[2] It is a two-person office, the staff being comprised of the Clerk and her deputy clerk. As deputy clerk, plaintiff performed all the duties that defendant performed. Some duties, such as tax reporting for the State Department, had been wholly delegated to plaintiff. Other duties were shared by plaintiff and defendant, such as notarizing documents, preparing marriage reports, reporting to the Department of Motor Vehicles, issuing licenses, and handling probate matters. The duties of the county court clerk are largely ministerial in nature, although the clerk has some discretion in her quasi-judicial functions. These functions include issuing letters to fiduciaries or executors of estates, approval of inventories of estates, closing estates, and initial approval of attorney fees and fiduciary fees.

On December 8, 1993, the plaintiff announced her candidacy for the office of Jackson County Court Clerk in the local newspaper. On the following day, the defendant gave plaintiff a separation notice that stated:

> Ms. Carver is running for the office of County Court Clerk (for whom she is employed) and, to avoid problems, is being laid off.

*Complaint*, Ex. A. There is no dispute as to why plaintiff was terminated. Plaintiff was a good worker. Defendant considered her a good friend and valued employee.[3] Defendant admitted at deposition that if plaintiff had never decided to run against her, she would still be deputy clerk.[4]

## III. STANDARD OF REVIEW

The standards governing the decision on a motion for summary judgment are well established. Summary judgment is appropri-

---

**1. T.C.A. § 8–20–109. Removal of deputies or assistants.**—Any and all deputies and assistants in any of the offices covered by this chapter shall be removable by the officer for whom they are acting, at will. T.C.A. § 8–20–109 (Michie 1993).

**2.** Mildred Dennis Deposition, p. 44.

**3.** Mildred Dennis Deposition, p. 30.

**4.** Mildred Dennis Deposition, p. 31.

ate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

 A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Moreover, a dispute about a material fact is "genuine" within the meaning of Fed. R.Civ.P. 56 only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient. *Id.* at 252, 106 S.Ct. at 2512. Moreover, a plaintiff cannot avoid summary judgment on the basis of "nebulous assertions." *Gordon v. Barnes Pumps, Inc.*, 999 F.2d 133, 138 (6th Cir.1993). In ruling on a motion for summary judgment, this court must view the evidence in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *White v. Turfway Park Racing Assn., Inc.*, 909 F.2d 941, 943–44 (6th Cir.1990).

 A defendant may prevail on summary judgment by showing that the plaintiff cannot satisfy all elements of his or her claim, by showing that the plaintiff cannot rebut an affirmative defense, or by prevailing on a pure question of law. *Watkins v. Shared Hosp. Services Corp.*, 852 F.Supp. 640, 643 (M.D.Tenn.1994).

## IV. DISCUSSION

 The court need not answer the broad question of whether a person who announces her intention to run for office is entitled to First Amendment protection.[5] For purposes of this motion, the court will assume that an employee who announces her candidacy for her boss's job is engaging in political activity

---

5. Defendant argues that candidacy itself is not a fundamental right and, therefore, plaintiff cannot state a claim for relief under 42 U.S.C. § 1983. *Clements v. Fashing*, 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982). In *Clements*, the Supreme Court reviewed a Texas law that forced certain state and county officials to resign their positions before they could run for another public office. 457 U.S. at 960–61, 102 S.Ct. at 2842. To determine whether the state laws violated the Equal Protection Clause of the Fourteenth Amendment, the *Clements* court declined to apply strict scrutiny because candidacy is not a fundamental right for purposes of equal protection analysis. 457 U.S. at 963–64, 102 S.Ct. at 2843–44. However, simply because a right is not a "fundamental" one for purposes of the Equal Protection Clause does not mean it is not entitled to First Amendment protection. *Clements v. Fashing*, 457 U.S. at 975, fn. 2, 102 S.Ct. at 2849–50, fn. 2 (Stevens, J. concurring) (recognizing that Constitution places added restraints on a state government's employment practices). *See also* 42 U.S.C. § 1983 (protects against deprivation of "any rights, privileges, or immunities secured by the Constitution and laws," not just "fundamental" rights); *Johnson v. Cushing*, 483 F.Supp. 608, 612–14 (D.Minn.1980) (holding that regardless of whether the right to run for office is *fundamental*, it is no doubt a federal constitutional right protected by the First Amendment). *But see Newcomb v. Brennan*, 558 F.2d 825, 828 (7th Cir.1977) (plaintiff's interest in seeking office, by itself, is not entitled to constitutional protection); *Donlin v. Watkins*, unreported Case No. 84–1506 (N.D.Ohio 1985), *aff'd*, 814 F.2d 273 (6th Cir. 1987) (plaintiff can assert no federally protected right to be a candidate for a state political office).

Indeed, notwithstanding the *Clements* decision, several courts have recognized that an employee's announcement of candidacy is political activity worthy of First Amendment protection. *Perry v. Larson*, 599 F.Supp. 727 (E.D.Wis.1984), *aff'd*, 794 F.2d 279 (7th Cir.1986) (plaintiff, deputy sheriff, stated a § 1983 claim against defendant sheriff by claiming he was terminated because he ran against the defendant for the office of sheriff); *Price v. Townsend*, 631 F.Supp. 106 (W.D.Ark.1986) ("the right to run for office lies at the very heart and core of what it means to live in a republic, and it is thus well settled that the First Amendment protects that right from governmental interference"); *Mysinger v. Foley*, 651 F.Supp. 328 (W.D.Ark.1987) (plaintiff's expression of his intent to run against his boss recognized as protected political activity); *Rodriguez v. Munoz*, 808 F.2d 138 (1st Cir.1986) (recognizing that First Amendment right exists to run for political office); *Simmons v. Stanton*, 502 F.Supp. 932 (W.D.Mich.1980) (holding that the discharge of an employee for announcing either his intentions or his consideration of the possibility of running for public office against an incumbent of a public office violates his First and Fourteenth Amendment rights); *De Stefano v. Wilson*, 96 N.J.Super. 592, 233 A.2d 682 (1967) (running for office is a means of political expression protected by the First Amendment).

and, therefore, is entitled to First Amendment protection. Even so, the defendant is entitled to summary judgment.

■ The court agrees with the parties that the facts of this case do not fall neatly into the line of political affiliation cases established by the Supreme Court. *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). Ms. Carver was not fired because she held political views different from those held by Ms. Dennis. Rather, when an employee is fired because of political *activity,* and there is evidence that the activity caused some disruption in the workplace, it is more appropriate to apply a balancing test. *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). The Supreme Court has stated:

> For at least 15 years, it has been settled that a State cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression. Our task, as we defined it in *Pickering,* is to seek "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public service it performs through its employees."

*Connick v. Myers,* 461 U.S. at 142, 103 S.Ct. at 1687 (citing *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968)). In considering a state employer's interest in maintaining an efficient office environment, the Court stated:

> When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate. Furthermore, we do not see the necessity for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action.

*Connick v. Myers,* 461 U.S. at 151–52, 103 S.Ct. at 1692.

■ *Pickering* and its progeny represent examples of ad hoc balancing. Because of the "enormous variety of fact situations" in which conflicts might arise in the workplace, the *Pickering* Court refused to state a general standard by which political activity in the workplace should be judged. 391 U.S. at 569, 88 S.Ct. at 1735. The outcome of each case depends on an identification and weighing of competing interests. *Id.*

The Sixth Circuit applied the *Pickering* balance test to a set of facts strikingly similar to this case in *Donlin v. Watkins,* 814 F.2d 273 (6th Cir.1987). In that case, plaintiff and defendant were assistant county prosecutors in Trumbull County, Ohio. The county prosecutor resigned, and both plaintiff and defendant sought the nomination of the Democratic Central Committee for the appointment as interim county prosecutor. Defendant won the nomination. 814 F.2d at 274.

The position of county prosecutor was to be filled by the vote of the people later that year in the general election. Both plaintiff and defendant sought the nomination in the May primary. They were the only contenders on the Democratic primary ballot for county prosecutor. Upon learning that plaintiff filed as a candidate, defendant called plaintiff into his office and asked for his resignation. When plaintiff refused to resign, defendant fired him. Defendant later won the primary and general elections. 814 F.2d at 274–75.

The district judge in *Donlin* first recognized that the first amendment freedom plaintiff sought to protect was his right to run for public office. *Donlin v. Watkins,* unreported Case No. 84–1506 (N.D.Ohio 1985), at p. 6. The court pointed out that plaintiff was never prevented from running for office. *Id.* However, a burden was placed on plaintiff's expression when his employment was terminated. *Id.* In applying the *Pickering* balance test, the district court stated:

> Plaintiff was employed at the pleasure of the county prosecutor in a situation naturally giving rise to a close working relationship. In conducting the responsibili-

ties of this public office while running as opponents in a political campaign for that same office, the public duties would naturally suffer or be subject to constant conflicts of interest.

*Id.* After weighing plaintiff's First Amendment rights against the interests of the employer, the court granted summary judgment for the defendant. *Donlin v. Watkins,* 814 F.2d 273 (6th Cir.1987). The court stated that plaintiff's continued employment while running for his boss's office "would have created serious problems, including friction among staff members, morale problems, and possible security problems in that plaintiff had access to sensitive, confidential, and privileged information and could have been motivated to release such information in an effort to defeat defendant." 814 F.2d at 276.

Similar concerns exist in this case. In a two-person office, with one worker campaigning against the other for the same position, it is unreasonable to assume that the work environment would remain unaffected. Although the defendant has presented no evidence of actual disruption, the County Clerk testified that Ms. Carver's continued employment as deputy clerk would have "jeopardized" her job. *Mildred Dennis Depo.* at p. 30.

Further, Ms. Dennis did not have to allow "events to unfold to the extent that the disruption in the office [was] manifest before taking action." *Connick v. Myers,* 461 U.S. at 151–52, 103 S.Ct. at 1692. Typically, as campaigns progress, candidates develop different positions on issues, and a candidate challenging an incumbent may advertise how he or she would do things differently. One similarly situated candidate stated:

> I don't see how you can campaign and get people's attention without having some kind of a format, a platform. And if you just go along and say, "Ladies and Gentlemen, I agree with [the incumbent] but put me in office," you're not going to get a vote.

*O'Leary v. Shipley,* 313 Md. 189, 545 A.2d 17 (App.1987). It is unreasonable to assume that plaintiff and defendant could leave their differences at the office doorway. Even assuming a very friendly campaign, working one desk away from a political rival would create friction, and the public duties of the office would suffer.

Finally, in a close working relationship such as this one, issues of trust and loyalty cannot be ignored. An employer is entitled to loyalty from her single employee, and that loyalty might be compromised if the employee decided to run for her boss's position. *See generally Wilbur v. Mahan,* 3 F.3d 214 (7th Cir.1993) (public agency would be unmanageable if its head had to retain political enemies); *Painter v. Graley,* 70 Ohio St.3d 377, 639 N.E.2d 51 (1994) (under Ohio law, an employer is not constitutionally required to "accept his subordinate's decision to become a candidate for election to partisan elected office, and maintain the employment of that subordinate during his candidacy or term of office"); *Mysinger v. Foley,* 651 F.Supp. 328 (W.D.Ark.1987) (it is not fair to require sheriff to retain employees who desire to "beat him" in the upcoming election).

Based on the closely-knit nature of the Jackson County Court Clerk's office and the other facts of this case, the court concludes that the interests of the employer override plaintiff's First Amendment rights, to whatever extent they exist. *Donlin v. Watkins,* 814 F.2d 273 (6th Cir.1987). Accordingly, defendant is entitled to summary judgment on plaintiff's § 1983 claim.

## V. CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is granted. The court need not address defendant's qualified immunity argument. An appropriate order will be entered.